UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL A. GRAY,

Plaintiff,

v.

H/O JARMER; LT. VERA POOL, Commander; CAPT. PARKS; LT. RUSSELL; C/O GARRICK; C/O MASON; SGT. SEALS; C/O RUIZ; C/O CROTEAU; C/O BLOOMSTER; BLANCHARD,

Defendants.

Case No. 3:24-cv-01727-CL

**FINDINGS AND RECOMMENDATION**

CLARKE, Magistrate Judge.

Plaintiff, a self-represented adult in custody (AIC), filed this action pursuant to 42 U.S.C. § 1983 alleging civil rights violations arising from his detention at Multnomah County jail facilities. Before the Court are the parties' cross-motions for summary judgment on all claims. For the reasons explained below, Plaintiff's motion should be denied and Defendants' motion

should be denied with respect to Plaintiff's claim of excessive force against Sgt. Bloomster and granted in all other respects.

## BACKGROUND

From February 2023 to February 2024, Plaintiff was a pretrial detainee at the Multnomah County Inverness Jail (MCIJ) and the Multnomah County Detention Center (MCDC).

On February 19, 2023, while housed at MCIJ, Plaintiff covered his cell window with toilet paper and refused to remove it. Plaintiff states that he was "detoxing from meth and fentanyl withdrawals" and "hearing voices." Pl.'s Mot. Summ. J. at 1-2 (ECF No. 44). Plaintiff swore at a mental health provider called to examine him and repeatedly stated that he wanted jail staff members to kill him and that he would harm anyone who entered his cell. Pedro Decl. Exs. 1-2; Weiner Decl. Ex. 1 at 1:48-55, 4:10-20, 7:10-:50, 8:03- :55, 10:55-11:25; *see also id.* Ex. 3 at 9. Due to Plaintiff's threats of self-harm, jail staff placed him on suicide watch and decided to transfer him to MCDC for monitoring and evaluation by medical and mental health providers. Weiner Decl. Ex. 1 at 9:42-10:18; *id.* Ex. 3 at 9. Several staff members, including a member of a Crisis Negotiation Team (CNT), tried to obtain Plaintiff's cooperation for approximately two hours. Hong Decl. ¶ 4. A CNT member repeatedly told Plaintiff that correctional officials did not want to use force or hurt him, and Plaintiff refused to cooperate. *Id.*; *see* Weiner Decl. Ex. 1.

A Correctional Emergency Response Team (CERT Team) was ordered to extract Plaintiff from his cell. Hong Decl. ¶ 5. When the CERT Team entered, Plaintiff was wrapped in sheets and blankets on the upper bunk. Weiner Decl. Ex. 1 at 12:30-:40. CERT team members took hold of Plaintiff's arms and legs, carried him out of the cell, and placed him in restraints and a transport chair. *Id.* Ex. 1 at 12:40-18:00; *see also id.* Ex. 2 at 1:05-5:30; Hong Decl. ¶ 6; Pedro

Decl. Ex. 3. Medical staff cleared Plaintiff for transport, and he was moved from MCIJ to MCDC. Weiner Decl. Ex. 3 at 10-11; Hong Decl. ¶ 7.

After Plaintiff was transferred to MCDC, he was monitored and placed on suicide watch when he refused to eat. Weiner Decl. Ex. 3 at 14-28.

On February 25, 2023, Plaintiff reported knee pain and requested "psych meds." *Id.* Ex. 3 at 31. On February 27, 2023, a nurse found no "visible deformity" and provided Plaintiff with pain medication and scheduled an x-ray of his knee. *Id.* Ex. 3 at 33-34.

The same day, Plaintiff received a phone call from his attorney. Deputy Garrick allowed Plaintiff to take the call on a phone located a short distance from his cell. Garrick Decl. ¶ 3. Plaintiff began crawling to the phone and demanded the use of a wheelchair. *Id.* ¶ 4. Deputy Garrick contacted medical staff, and they confirmed that Plaintiff did not have authorization to use a wheelchair for short distances within the dorm. *Id.* ¶ 5. After talking with his attorney, Plaintiff crawled back to his cell. *Id.* ¶ 6.

On February 28, 2023, Plaintiff was examined by a physician who noted Plaintiff's history of chronic back and knee pain and his previous lumbar spine fusion at a federal correctional facility. Weiner Decl. Ex. 3 at 35. The physician reported that Plaintiff's right knee "appears painful but otherwise benign" and ordered imaging of Plaintiff's spine and knee. *Id.* Ex. 3 at 36-37.

On March 1, 2023, a nurse confirmed that Plaintiff was authorized to use a wheelchair only for long distances and that medical staff were awaiting the results of imaging. *Id.* Ex. 3 at 38. Imaging of Plaintiff's spine revealed moderate degenerative disc disease with no other significant findings or acute injuries and imaging of his knee also showed "no evidence of an acute injury." *Id.* Ex. 3 at 39-40.

On March 20, 2023, Plaintiff sought authorization to use a wheelchair outside of his cell. A nurse reported that Plaintiff was "able to ambulate although refuses to ambulate," his imaging results were "unremarkable," and there was "no indication" for a wheelchair. *Id.* Ex. 3 at 41. Plaintiff was advised to discuss his request for a wheelchair with a physician during his next scheduled appointment. *Id.* Ex. 3 at 42.

On March 23, 2023, Plaintiff again requested a wheelchair for "walk time" in the dorm. Croteau Decl. ¶ 3. Deputy Croteau contacted medical staff about his request, and they responded that Plaintiff was authorized to use a wheelchair only for long distances and that walk time in the dorm would not be considered a long distance. *Id.* ¶ 4. Deputy Croteau informed Plaintiff that he was not authorized to use a wheelchair in the dorm, and Plaintiff banged on the pass-through door and demanded a sergeant. *Id.* ¶ 5. Plaintiff then returned to his cell, tied clothing around the hinge of his cell door to prevent it from closing, and sat on his bunk. *Id.* ¶ 6. Sgt. Bloomster and other deputies arrived in the dorm and Sgt. Bloomster ordered Plaintiff to remain on his bunk. *Id.* ¶ 8; Bloomster Decl. ¶ 4; Pedro Decl. Exs. 4, 6. Plaintiff allegedly tried to strike Sgt. Bloomster, and Sgt. Bloomster and other deputies pushed Plaintiff to the floor. The deputies eventually restrained Plaintiff and removed him from his cell in a wheelchair. Bloomster Decl. ¶¶ 5-7; *see also* Pedro Decl. Exs. 4, 6-7.

Afterwards, a nurse attempted to evaluate Plaintiff and he was uncooperative. Weiner Decl. Ex. 3 at 43. The nurse noted a "superficial abrasion," "no acute visible deformities or injuries," and "no grimacing or guarding, no appearance of difficulty and no acute visualized injury." *Id.* Medical staff continued to monitor and evaluate Plaintiff over the next several days, and Plaintiff refused to attend physical therapy sessions or a scheduled medical appointment. *Id.* Ex. 3 at 45-51.

On March 29, 2023, Plaintiff was examined by a physician who noted that Plaintiff had "chronic low back pain due to degenerative disc disease and lumbar spinal stenosis," with "exacerbation" of his pain resulting from the incidents on February 19 and March 23, 2023. *Id.* Ex. 3 at 52. The physician reported that Plaintiff "was holding his legs in the air above him volitionally and would not cooperate with exam" and that Plaintiff was "said to ambulate short distances by the deputies in his cell for ADLs." *Id.* Ex. 3 at 54. The physician assessed "significant deconditioning" and "acute [] chronic back pain" and prescribed pain medication and physical therapy sessions. *Id.* The physician also approved Plaintiff's use of a wheelchair outside of his cell. *Id.*

Plaintiff reported improvement with physical therapy, and in June 2023, medical personnel continued his physical therapy referral. *Id.* Ex. 3 at 58.

On May 15, 2023, Plaintiff reported a broken collarbone despite the lack of "any objective findings." Weiner Decl. Ex. 3 at 56. A subsequent x-ray revealed a "normal clavicle" and no fracture. *Id.* Ex. 3 at 57.

On August 22, 2023, Plaintiff reported chronic shoulder pain and he was referred for an MRI. *Id.* Ex. 3 at 59-61. The MRI revealed a rotator cuff tear in Plaintiff's right shoulder and he was referred for an outside orthopedic evaluation. *Id.* Ex. 3 at 62. Over the next several weeks, medical staff continued to monitor and treat Plaintiff's pain and ongoing health conditions. *Id.* Ex. 3 at 63-75.

In December 2023, an orthopedic specialist diagnosed Plaintiff with "adhesive capsulitis" of his right shoulder and "hypertrophic change along the humeral head compatible with chronic rotator cuff pathology." *Id.* Ex. 3 at 76. Based on this evaluation, shoulder surgery was not

indicated, and medical staff continued to treat Plaintiff's pain and referred him for additional physical therapy. *Id.* Ex. 3 at 86; *see also id.* 77-85.

On February 29, 2024, Plaintiff was transferred to ODOC custody.

**DISCUSSION**

Plaintiff alleges the use of excessive force against him and the denial of necessary medical treatment in violation of his rights under the Fourteenth Amendment. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (explaining that, under the Fourteenth Amendment's Due Process Clause, pretrial detainees have a right against jail conditions that "amount to punishment"). Plaintiff also alleges that Defendants discriminated against him by denying the use of a wheelchair outside of his cell. Plaintiff and Defendants move for summary judgment on all claims, arguing that no genuine issue of material fact precludes judgment as a matter of law. Defendants also move for summary judgment on grounds of qualified immunity. *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) ("A government officer is nevertheless entitled to qualified immunity if the plaintiff's rights were not clearly established at the time of the alleged misconduct.").

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

On cross-motions for summary judgment, the Court considers each motion separately and considers each party's motion on its own merits. *Fair Housing Council of Riverside Cnty., Inc. v.*

*Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and quotation marks omitted).

Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). Because Plaintiff is self-presented, the Court construes his pleadings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882-83 (9th Cir. 1991). However, this does not relieve Plaintiff from his "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. 10-CV-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

**A. Use of Excessive Force**

Plaintiff alleges two instances where jail officials allegedly used excessive force against him: the cell extraction on February 19, 2023 and the incident in his cell on March 23, 2023.[1] Plaintiff contends that on February 19, 2023, he "was not showing any threat to any one" and the CERT Team unnecessarily pulled him from the top bunk, let him fall do the ground, and used

---

[1] While Plaintiff names Jerri Jarmer, Vera Pool, Brian Parks, Brett Russell, Marcus Mason, and Matthew Blanchard as Defendants, he alleges no specific claims against these individuals and presents no evidence that they personally participated in the use of force on February 19, 2023 or March 23, 2023. *See* Pedro Decl. Exs. 1-6.

unreasonable force to restrain him. Pl.'s Mot. Summ. J. at 2-3. Plaintiff further alleges that on March 23, 2023, Sgt. Bloomster "slapped my hand and … started hitting me in the head and then tackled me." *Id.* at 6. Plaintiff claims that other officers "started kneeing me in the back and punching me in the back of my head" and that seven or eight minutes passed before they stopped beating him. *Id.*

To establish a claim of excessive force, a pretrial detainee must show that "that the force purposely or knowingly used against him was objectively unreasonable" under the circumstances. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Factors relevant to this inquiry include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

The record of evidence does not support Plaintiff's allegations regarding the cell extraction on February 19, 2023. Instead, the record shows that the CERT team used a low level of force in response to Plaintiff's resistance and threats of self-harm and attempted to limit the force used during the encounter.

As noted above, MCIJ staff utilized the CNT to persuade Plaintiff to leave his cell without resorting the use of force. Weiner Decl. Ex. 1 at 1:20-11:45. When those efforts failed, the CERT Team entered Plaintiff's cell, took hold of Plaintiff's arms and legs, and lowered him from the upper bunk to the floor. *Id.* Ex. 1 at 12:30-14:30. A video recording submitted by Defendants shows the CERT team using minimal force during this process; no team member yanked on Plaintiff's extremities or struck him, and team members were repeated instructed to move "slow" as they moved Plaintiff from his bunk. *Id.* Ex. 1 at 12:53-58. Once Plaintiff was

lowered from the bunk, the CERT team brought him outside of the cell, and the recordings show Plaintiff kicking out his legs and resisting the team's efforts to restrain him. *Id.* Ex. 1 at 13:00-13:50; *id.* Ex. 2 at 1:05-:30. CERT team members eventually restrained and handcuffed Plaintiff, again using minimal force, and placed him in a transport wheelchair. *Id.* Ex. 1 at 14:00-18:00; *id.* Ex. 2 at 1:35-5:30. While Plaintiff loudly contested the officers' actions and shouted that he was in pain, the recording reflects that CERT team members did not handle Plaintiff with undue roughness or force. Further, Plaintiff later received medical treatment and medical staff noted no deformity, swelling, or acute injury. Weiner Decl. Ex. 3 at 10-11. Finally, the record reflects that Plaintiff suffered from chronic back issues before this incident, and while the use of force arguably exacerbated his pain, it did not cause a severe injury. Thus, the *Kingsley* factors weigh heavily in favor of Defendants, and the use of force by CERT members on February 19, 2023 was objectively reasonable under the circumstances.

However, I find that questions of fact preclude summary judgment with respect to the incident on March 23, 2023. Sgt. Bloomster contends that the use of force by him and other officers was justified because Plaintiff rushed toward him and attempted to strike him. Bloomster Decl. ¶¶ 5-6; Croteau Decl. ¶ 8. Sgt. Bloomster asserts that he responded to Plaintiff's "sudden attack" by pushing Plaintiff to the ground, where he and other deputies were "able to overcome" Plaintiff's "physical resistance" and restrain him. Bloomster Decl. ¶¶ 6-7. Plaintiff disputes Sgt. Bloomster's account and contends that he did not attempt to strike him and that the use of force, which allegedly included striking Plaintiff on the head, was unnecessary.

The video recording provided by Defendants does not resolve the parties' factual dispute. The recording shows that Sgt. Bloomster and three other officers approached the door of Plaintiff's cell and rushed into the cell after Plaintiff raised his hand near Sgt. Bloomer. Pedro

Decl. Ex. 7 at 00:10-23. About ninety-five seconds later, a mattress was thrown from Plaintiff's cell, and approximately four minutes after the initial encounter, officers removed Plaintiff from his cell in a wheelchair and with a "spit sock" over his head. *Id.* Ex. 6 at 2; *id* Ex. 7 at 1:58-2:00, 4:25-:38. The recording has no audio feed and does not show what happened inside of Plaintiff's cell. *Id.* Ex. 7.

Ultimately, the reasonableness of Stg. Bloomster's use of force on March 23, 2023 boils down to credibility, and this Court cannot assess the parties' credibility on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Because genuine issues of material fact remain, qualified immunity is likewise not appropriate at the summary judgment stage. *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (stating that "a district court should decide the issue of qualified immunity as a matter of law when the material, historical facts are not in dispute") (internal quotation marks and citation omitted).

Accordingly, genuine issues of material fact preclude this Court from finding, as a matter of law, that Sgt. Bloomster's use of force on March 23, 2023 was objectively reasonable under the circumstances, and summary judgment should be denied on this claim.

**B. Inadequate Medical Treatment**

Plaintiff also alleges that Defendants failed to provide adequate treatment for his medical and mental health needs, including injuries he allegedly suffered as a result of the use of force on February 19 and March 23, 2023.

An objective standard applies to constitutional claims of inadequate medical care brought by pretrial detainees. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under this standard, pretrial detainees must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (quoting *Gordon*, 888 F.3d at 1125). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.*

Plaintiff presents no evidence that any of the named Defendants denied medical treatment and recklessly disregarded a threat to Plaintiff's health. In fact, Plaintiff does not allege that any named Defendant personally participated in or interfered with his medical treatment. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (stating that liability under § 1983 arises only upon a showing of personal participation by each defendant). Regardless, the record reflects that medical staff evaluated and provided treatment for Plaintiff's ongoing medical conditions and the injuries he allegedly sustained in February and March 2023. *See generally* Weiner Decl. Ex. 3. Medical staff examined Plaintiff on numerous occasions, provided pain medication, and referred him for imaging, evaluations by outside specialists, and physical therapy sessions. *Id.*

On this record, Plaintiff fails to present evidence suggesting that any medical provider disregarded a substantial risk to his health, and summary judgment should be granted on this claim.

**C. Disability Discrimination**

Finally, Plaintiff alleges that Deputies Garrick and Croteau violated his rights under the Americans With Disabilities Act (ADA) by denying him the use of a wheelchair in the dorm areas on February 27 and March 23, 2023. Plaintiff alleges that on February 27, 2023, he "was forced by Dep. Garrick[] to crawl 20 feet back to [his] cell without a wheelchair that was approved by Dr. Platas to have." Compl. at 5. Plaintiff similarly alleges that on March 23, 2023, Deputy Croteau refused to provide him with a wheelchair for his walk time in the dorm. Pl.'s Mot. Summ. J. at 4-5.

The ADA prohibits a public entity, including a correctional facility, from discriminating against a qualified individual with a disability. 42 U.S.C. § 12131 *et seq.*; *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001); *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). A failure to provide reasonable accommodation to an AIC can constitute discrimination, and "the need for reasonable accommodation applies to inmate transportation." *Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025). "After receiving a request for an accommodation, a public entity must 'undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.'" *Id.* (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). To recover monetary damages, a plaintiff must prove intentional discrimination, which can be shown by deliberate indifference. *Duvall*, 260 F.3d at 1138-30.

Plaintiff fails to present evidence suggesting that Deputies Garrick and Croteau were deliberately indifferent to Plaintiff's need for a wheelchair. Both deputies contacted medical staff to determine whether Plaintiff was authorized to use a wheelchair in the dorm, and in both instances, medical staff advised that Plaintiff was authorized to use a wheelchair for only long distances and not in the dorm. Garrick Decl. ¶ 5; Croteau Decl. ¶ 4; *see also* Weiner Decl. Ex. 3

at 38, 41-42. The deputies are not medical providers, and Plaintiff presents no evidence suggesting that they could have taken additional measures to determine whether Plaintiff needed a wheelchair in the dorm.

On this record, Plaintiff fails to raise a genuine of material fact to defeat summary judgment and Defendants' motion should be granted on his ADA claim.

## RECOMMENDATION

Plaintiff's Motion for Summary Judgment (ECF No. 44) should be DENIED. Defendants' Motion for Summary Judgment (ECF No. 49) should be DENIED with respect to Plaintiff's excessive force claim against Sgt. Bloomster and GRANTED with respect to all remaining claims.

## SCHEDULING

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* Fed. R. Civ. P. 72(b)(2). The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).

DATED this 29 day of September, 2026.

MARK D. CLARKE
United States Magistrate Judge